IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
BETTY LOU MURRAY, et al.,  : CASE NO. 1:11 CV 00532
  :
                              Plaintiffs,  : MEMORANDUM AND ORDER
  : ADOPTING THE MAGISTRATE
            -vs-  : JUDGE'S REPORT AND
  : RECOMMENDATION AND DENYING
  : THE DEFENDANTS' MOTION FOR
MARY GLYNN HOMES, INC., et al.,  : SUMMARY JUDGMENT
  :
                              Defendants.
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

This matter was referred to United States Magistrate Judge Nancy A. Vecchiarelli pursuant to Local Rule 72.2 for a report and recommendation ("R&R") on the defendants' motion for summary judgment. On 20 February 2013, the Magistrate Judge returned an R&R recommending that the motion be denied. Defendants Mary Glynn Homes, Inc., ("Mary Glynn") and Cranston Chriss now object, and the plaintiffs Betty Lou Murray and Sean Johnson have filed a response. For the reasons that follow, the defendants' objections are overruled, the Magistrate Judge's report and recommendation is adopted, and the motion is denied.

**I. Background**

The relevant undisputed facts, as set forth in the R&R, are restated here:

Chriss is the CEO of Mary Glynn. Mary Glynn places aides in the residences of individuals –referred to as "consumers" – with developmental disabilities. These aides assist the consumers in "shopping, feeding, bathing, outings, movies, parks. Anything to help them be productive." The consumers require 24-hour care and supervision "due to infirmities." Generally, the county Board of Mental Retardation and Developmental Disabilities ("County") refers individuals to Mary Glynn. The services provided to an individual consumer are dictated by his or her individual service plan ("ISP"), which is formulated by the County.

In addition to acting as the CEO of Mary Glynn, Chriss owns multiple single family and duplex properties in which Mary Glynn consumers reside. Consumers lease the properties from Chriss, who has agreed to allow Mary Glynn to "place aid[e]s in each of [his] facilities to facilitate the tenant's needs."

Johnson worked as aide with Mary Glynn consumers from November 2008 until March 2010. Johnson worked shifts that were 24 hours long. He was generally paid $90 or $95 for each 24-hour shift. Although he "regularly worked" more than 40 hours per week, he was not paid overtime. Murray worked as an aide with Mary Glynn consumers from February 2009 until August 2009. During that time, Murray worked 24-hour shifts for a flat pay of $100. She regularly worked "in excess of 40 hours per week," and "was not paid time and a half for hours worked in excess of 40."

(R&R at 1-3) (citations omitted).

Plaintiffs Murray and Johnson filed suit, alleging that the defendants failed to pay minimum and overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("MFWSA"); that the defendants failed to pay minimum wage in violation of the Ohio Constitution; and that the defendants retaliated against plaintiff Murray in violation of the FLSA, the MFWSA, and the Ohio Constitution by constructively discharging her after she complained to the defendants about her wages. The defendants filed for summary judgment. On referral, the Magistrate Judge recommended denying the motion. The defendants now object.

**II. Law and Argument**

This Court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." Local Rule 72.3(b). The failure by either party to file specific objections constitutes a waiver of the right to appeal the magistrate's recommendations. Thomas v. Arn, 474 U.S. 140, 155 (1985); Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508–09 (6th Cir.1991).

**A. First Objection**

In their motion for summary judgment, the defendants argue that the overtime and minimum wage provisions of the FLSA and the MWFSA do not apply to the plaintiffs, because the plaintiffs were independent contractors. In determining whether an individual is an employee or an independent contractor, courts consider a variety of factors:

> (1) the permanency of the relationship between the parties;
> (2) the degree of skill required for rendering of the services;
> (3) the worker's investment in equipment or materials for the task;
> (4) the worker's opportunity for profit or loss, depending upon his skill; and
> (5) the degree of the alleged employer's right to control the manner in which the work is performed.

Brandel, 736 F.2d at 1117; see also Imars v. Contractors Mfg. Servs., Inc., 165 F.3d 27 (6th Cir. 1998) (unpublished per curiam decision) (adding a sixth factor, "whether the service rendered is an integral part of the alleged employer's business").

The Magistrate Judge concluded that summary judgment was not warranted on this issue because the facts were in dispute as to whether the defendants controlled the

3

ways in which the plaintiffs performed their work. The Magistrate Judge noted in particular that Mary Glynn's' "team leaders" supervised the plaintiffs' work; that the plaintiffs did not control their own schedules; that Mary Glynn assigned the plaintiffs to work with individual customers; that Mary Glynn trained the plaintiffs in medication monitoring and compliance with Individual Service Plans; that Mary Glynn determined the plaintiffs' schedules and work locations. The Magistrate Judge also noted that there is no evidence that the plaintiffs used their own equipment or controlled their own opportunities for profit and loss; and that it is undisputed that providing customers with the plaintiffs' assistance was an integral part of Mary Glynn's business.

In the defendants' view, these facts should not preclude summary judgment because much of the evidence cited by the Magistrate Judge only involves the defendants' efforts to ensure compliance with the ISPs formulated by the County and to promote the health and safety of clients. The defendants state that they did not exercise control over the plaintiffs' "actual work"; Rather, the defendants were only concerned with the method and manner of the plaintiffs' work to the extent required to maintain compliance with requirements of the County.

This argument has no merit. The defendants' contention that they trained the plaintiffs and oversaw their work only for the purpose of ensuring compliance with the ISPs is not germane to the question of the plaintiffs' employment status. The defendants cite no authority for the proposition that motivation is somehow relevant to the issue. On de novo review, it is this Court's opinion that the Magistrate Judge reviewed the relevant factors and correctly concluded that material facts are in dispute as to whether the plaintiffs are employees or independent contractors for the purpose of this lawsuit.

Moreover, while it is undisputed that the County formulated the ISPs that determined the services that were provided to the customers, this is not to say that the defendants' exercise of control over the plaintiffs was somehow diminished as a result. As noted in the plaintiffs' response, the plaintiffs had no relationship with the County. The record suggests that whatever obligation the plaintiffs had to comply with the ISPs existed only by virtue of Mary Glynn's requirement that they do so. The objection is overruled.

**B. Second Objection**

Next, the defendants contend that the Magistrate Judge erred by concluding that a genuine factual dispute exists as to whether the domestic services exemption should apply. For the domestic services exemption to apply, the employee must be employed in a "private home." There is no bright line rule on what constitutes a "private home," but the Magistrate Judge noted that courts focus on the "the extent of control the resident has over his or her residence, and the relationship between the resident and the entity providing the care." (R&R at 14). Other factors for consideration include

> (1) whether the client lived in the living unit as his or her private home prior to receiving services; (2) who owns the living unit; (3) who manages and maintains the residence, considering "who provides the essential things that the client needs to live there, such as paying the mortgage or rent, paying for gas, electricity and water, providing clean linens and clothes, and providing food"; (4) whether the client would be allowed to live in the unit if the client were not contracting with the provider for services; (5) "the relative difference in the cost/value of the services provided and the total cost of maintaining the living unit"; and (6) whether the service provider uses any part of the residence for the provider's own business purposes.

(R&R at 15 (citing <u>Welding v. Bios Corp.</u>, 353 F.3d 1214, 1218-19 (10th Cir. 2004)).

On the fourth factor, the Magistrate Judge found a disputed issue of fact because although the defendants claimed that residency was not contingent on receiving services

from Mary Glynn, the defendants were unable to identify with any specificity a tenant who had done so.

On the question of the extent to which the resident had control over his residence, the Magistrate Judge noted evidence showing that clients were prohibited from keeping keys to their residences, using or entering garages to the residences, using the front yards, having visitors without permission, or leaving the residence without supervision, among a number of others. The Magistrate Judge also found that although the homes were owned by Mr. Chriss and not Mary Glynn, this factor is only one among many, and it lacked weight because Chriss operated Mary Glynn.

The defendants contend the Magistrate Judge erred on the issue of whether residency was conditioned on receiving services from Mary Glynn by referring to a rental agreement that shows that residents were not required to receive Mary Glynn services in order to live in Mr. Chriss's homes. In the Court's view, the existence of this document is not dispositive. First, as noted by the Magistrate Judge, Mr. Chriss was unable to identify any client who had resided in one of his homes but did not receive Mary Glynn's services. Second, in light of the numerous facts showing that Mary Glynn clients were subject to "rules that do not typically apply to adults in private homes," Madison v. Resources for Human Dev., Inc., 233 F.3d 175, 184 (3d Cir. 2000), the Court is convinced that summary judgment is inappropriate in this instance.

Moreover, the Court rejects Mary Glynn's argument that the restrictions placed on clients should be overlooked because they were implemented in accordance with the ISPs formulated by the County. Mary Glynn provides no authority that would require the Court's consideration of the reasons that the rules were implemented. Rather, as noted

6

by the plaintiffs, the relevant question is *whether* the clients were denied primary control of their residence, not *why* they were denied. Because the Magistrate Judge correctly determined that the facts relating to this issue are in dispute, the objection is overruled.

### C. Third Objection

Next, the defendants contend that the Magistrate Judge erred by concluding that disputed facts preclude summary judgment on the question whether plaintiff Ms. Murray established a prima facie case of retaliation. To establish a prima facie case of retaliation, an employee must prove that (1) she engaged in protected activity under the FLSA; (2) her employer was aware of her protected activity; (3) thereafter, her employer took an adverse employment action against her; and (4) there was a causal connection between her protected activity and her employer's adverse employment action. Adair v. Charter Cnty. of Wayne, 452 F.3d 482, 489 (6th Cir. 2006).

In this instance, the Magistrate Judge concluded that Ms. Murray engaged in protected activity when she made an oral complaint to Mr. Chriss that it was "against the law" to require her to work a 24-hour shift. In the Magistrate Judge's view, this complaint, in its context, was sufficiently detailed to put the defendants on notice that Ms. Murray was invoking her rights under the FLSA and calling for their protection.

The defendants disagree and argue that because Ms. Murray complained about the number of hours in her shift and not the amount she was being paid, the defendants had not been placed on notice that Ms. Murray was asserting rights under the FLSA. The defendants suggest that Riffe v. Wal-Mart Stores, Inc., 1:11 CV 266, 2012 WL 204164 (N.D. Ohio Jan. 24, 2012) supports the proposition that an employee seeking protection of FLSA must base her complaint on the amount she was being paid.

This argument has no merit. The relevant standard is provided in <u>Kasten v. Saint-Gobain Performance Plastics Corporation</u>, 131 S.Ct. 1325 (2011), which states:

> To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones.

Id. at 1335. The FLSA provides rights to employees concerning minimum wages, maximum hours, and overtime pay. 29 U.S.C. § 201 <u>et seq.</u> In this instance, Ms. Murray complained that "it's against the law to work somebody 24 hours." In response, Mr. Chriss told her that her shift was only 16 hours long and that she sleeps 8 hours. Ms. Murray stated that she had not slept 8 hours since she started, and she requested that she be able to leave after 16 hours. Mr. Chriss declined her request. Although Ms. Murray did not specifically complain about the amount she was being paid, her complaint, in light of content and context, should have put a reasonable employer on notice that she was invoking the protection of the statute.

<u>Riffe</u> does not demand a different result. That case held that the "Plaintiff's complaints of receiving calls at home, and her conduct in seeking pay for her time by making electronic time adjustments . . . do not constitute a sufficiently clear and detailed complaint" under <u>Kasten</u>. <u>Riffe</u>, 2012 WL 204164, at *7 (internal quotations omitted). Although the <u>Riffe</u> court indicated that the employee "did not testify that she complained about failing to receive proper overtime or other compensation," this observation was made in the context of refusing to consider a contradictory affidavit submitted by the plaintiff in response to a summary judgment motion. <u>Riffe</u> does not stand for the

8

proposition that an FLSA plaintiff *must* complain specifically about failing to receive overtime or other compensation to satisfy Kasten. The defendants' objection is overruled.

The defendants also object to the Magistrate Judge's conclusion that issues of fact preclude summary judgment on the question whether Ms. Murray suffered an adverse employment action when she was allegedly constructively discharged. The Magistrate Judge noted that after Ms. Murray complained to Mr. Chriss, she was assigned fewer shifts that resulted in a reduction in pay. Then, Ms. Murray was directed to go to a house to which she had not been assigned and clean out a refrigerator that had been without power for four days. She decided to quit  because "the amount of money [she] was making wasn't worth it anymore."

The defendants contend, without support, that these facts are insufficient to establish constructive discharge. The Court disagrees, as Ms. Murray has set forth facts by which a jury could conclude that the defendants "deliberately create[d] intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit . . . . Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999).

### D. Statute of Limitations

Finally, the defendants maintain that the plaintiffs' overtime and wage claims for amounts owed prior to 14 March 2009 are barred by the statute of limitations. The defendants indicate that it moved for summary judgment on this ground but that the plaintiffs did not respond to the issue.  The Magistrate Judge did not address the issue in the report and recommendation.

9

The plaintiffs argue that it was not clear based on the defendants' brief that the defendants were moving for summary judgment on this ground. In the defendants' brief, under a subsection entitled "A. Plaintiffs are not entitled to minimum wage or overtime under the FLSA because they provide companionship and home health care services in private homes," the defendants state that, "[a]ny wages or overtime that the Plaintiffs argue they are owed prior to March 14, 2009 are barred by the statute of limitations as this case was brought on March 13, 2011." The identical sentence appears again two pages later in relation to plaintiffs' claims under the MFWSA.

This is the totality of defendants' argument relating to the statute of limitations, and it is not surprising that neither the plaintiffs nor the Magistrate Judge responded to it. The argument, stated without legal support and located in an unrelated section of the defendants' brief, was insufficient to put the plaintiff on notice that the defendants sought summary judgment on the limitations issue. The Court is not inclined to grant summary judgment upon "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation . . . . It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997) (quoting Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n, 59 F.3d 284, 293-94 (1st Cir.1995)).

In any event, it appears that the plaintiffs' state law overtime and wage claims are subject to a three-year limitations period, pursuant to Ohio Rev. Code 4111.14(K). In addition, because the plaintiffs allege willful violations of minimum wage and overtime

10

provisions of the FLSA, those claims are also subject to a three-year limitations period as well. 29 U.S.C. § 255(a).

### III. Conclusion

For the reasons stated above, the defendants' objections are overruled. The Magistrate Judge's report and recommendation is adopted, and the defendants' motion for summary judgment is denied.

IT IS SO ORDERED.

                                                   /s/ Lesley Wells  
                                               UNITED STATES DISTRICT JUDGE

Date: 12 August 2013